THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD
ORTIZ *et al.,* Defendants-Appellants.

First District (2nd Division) No. 60847

Opinion filed December 31, 1975.

James J. Doherty, Public Defender, of Chicago (Lance R. Miner and
Marilyn Israel, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Marcia
B. Orr, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for
the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Michael Havron and Gerald Ortiz, defendants, were found guilty after
a jury trial of the crime of armed robbery. (Ill. Rev. Stat. 1971, ch. 38,
par. 18—2.) Havron was sentenced to a term of from 8 to 30 years and
Ortiz was sentenced to a term of from 5 to 15 years. Defendants appeal
arguing that the trial court erred in denying their motion to quash the
arrests. Defendant Ortiz also argues that the trial court improperly re-
stricted his right to cross-examine the complaining witness.

At the pretrial motion to quash the arrests, Chicago Police Officer Gary Lapidus testified that on September 18, 1972, the police received a complaint from Peggy Hammond that she had been raped. Ms. Hammond identified Ortiz and Curtis Horne as the men who attacked her. As a result of this complaint, on September 20, 1972, Officer Lapidus together with other Chicago police officers and Peggy Hammond proceeded to 4710 North Kenmore, Chicago, Illinois. Peggy Hammond identified the proper apartment. As the police officers were talking to Mrs. Havron, who opened the door, they observed defendant Ortiz run by the door with a gun in his hand. The officers entered the apartment and Ortiz ran out the back door. Ortiz was pursued and placed under arrest by other officers. Inside the apartment, Officer Lapidus observed several suitcases and a variety of clothing bearing price tags from Marlene's Discount Store. Defendants Havron and Curtis Horne were placed under arrest inside the apartment. Officer Lapidus did not have a warrant for the arrest of either defendant.

At trial, Sam Sulkin, the owner of Marlene's Discount Store, and Ricky Correa, a part-time employee of the store, testified that on September 18, 1972, the two defendants together with two other men entered the store. The four men looked around the store for approximately one hour during which time Sulkin had a conversation with each of them. One of the men then approached Sulkin, produced a gun and announced a robbery. Defendant Havron emptied the register while one of the other men searched Sulkin. The men forced Sulkin and Correa into the back room where their hands were bound. Sulkin testified that when the men left the back room he looked into the store through a one-way mirror. At that time he observed defendants Havron and Ortiz, together with the other two men, take several suitcases off the rack and pack various items of clothing from the store into the suitcases. After 15 to 20 minutes, the four men left the store. The police were immediately notified.

On September 20, 1972, Sulkin and Correa viewed a lineup of approximately 10 men. Both men viewed the lineup separately and both men identified the defendants Ortiz and Havron as two of the men who had robbed them.

Chicago Police Officers Gary Lapidus, David Sandlund, Thomas Rennie, Randall Ryan, Donald Roth, John Roberts and James Allotta testified that on September 20, 1972, they proceeded to 4710 North Kenmore, Chicago, Illinois. Officers Allotta and Roberts positioned themselves at the rear of the building while the other officers went to an apartment on the second floor. After knocking, Mrs. Havron opened the door. At that time the officers observed defendant Ortiz run past the door with a gun in his right hand. The officers entered the apartment. Ortiz ran

out the back door of the apartment and was pursued by Officers Allotta and Roberts. During the chase, defendant Ortiz fired one shot at the officers. Ortiz was subsequently apprehended several blocks away after a foot chase.

Inside the apartment the officers observed several suitcases and a variety of clothing bearing price tags from Marlene's Discount Store. The clothing was subsequently identified by Sam Sulkin as being taken from his store in the robbery. Recovered in the bedroom of the apartment was a loaded .38-caliber revolver which Sulkin testified was similar to the one used in the robbery of his store.

At the station, defendants Ortiz and Havron were each interviewed separately. After being advised of their constitutional rights, both defendants admitted the robbery of Marlene's Discount Store on September 18, 1972.

Defendants' first contention is that because the police entered the apartment without an arrest warrant when the police had the opportunity to secure a warrant, their arrest was unlawful and the personal property seized in the apartment, their confessions, and their identification should have all been suppressed as a product of the unlawful arrest. Defendants do not argue that their arrest was without probable cause but only that since the police officers had the opportunity to secure a warrant and did not their arrest is illegal.

In *People v. Johnson,* 45 Ill.2d 283, 287-88, 259 N.E.2d 57, the Illinois Supreme Court in rejecting this identical argument said:

> "Defendant argues, incorrectly, that a warrantless entry is permissible only in hot pursuit, or in any emergency when it is impractical to obtain a warrant. We agree that it is desirable for an arrest to be based upon a warrant when the circumstances permit.
> \* \* \* At the same time, however, we recognize that an arrest may be lawful when based upon probable cause, notwithstanding the absence of a warrant."

Defendants now argue that the law has changed and *Johnson* should no longer be followed. Recently, in *People v. Franklin,* 22 Ill.App.3d 775, 781, 317 N.E.2d 611, this court in rejecting this same contention, made the following comment about the *Johnson* case:

> "In *Johnson,* as in the instant case, the police were in possession of sufficient facts to cause a reasonable man to believe that a crime was committed and the defendant was one of the offenders. Therefore, their warrantless arrest of the defendant was lawful, as there is no requirement in this jurisdiction that they must first secure a warrant."

See also *People v. Martin,* 24 Ill.App.3d 710, 321 N.E.2d 368.

■■ In the case at bar, the arrest of both defendants was clearly based upon probable cause. The arrests were, therefore, legal and the trial court properly denied defendants' motion to quash the arrest and suppress the evidence resulting therefrom.

Defendant Ortiz also contends that the trial judge improperly limited the cross-examination of the complaining witness regarding his ability to observe and describe his assailants. During cross-examination defense counsel asked Sam Sulkin what description of the offenders he had given to the police immediately after the incident. The State's objection to the question was sustained by the trial court. Defendant now argues that this constituted reversible error.

The rule is well established that while considerable latitude is always allowed during the cross-examination of a witness, the scope of such cross-examination rests largely within the sound discretion of the trial court. (*People v. Gambony*, 402 Ill. 74, 83 N.E.2d 321.) Only where there has been an abuse of discretion resulting in manifest prejudice to the defendant will a reviewing court interfere. *People v. Nugara*, 39 Ill.2d 482, 236 N.E.2d 693; *People v. Matthews*, 7 Ill.App.3d 1059, 289 N.E.2d 98.

■■ In the case at bar the record reflects that the cross-examination of Sulkin was quite lengthy and thorough. Immediately after the trial court sustained the State's objection which defendant now claims was error, defense counsel asked Sulkin to describe the people who robbed him. After giving a brief description, Sulkin stated that he could not remember the entire description since almost a year had passed. The identification of the defendants by Sulkin and Correa was positive and the evidence of defendants' guilt was overwhelming. Upon the basis of the record before us, we conclude that the defendants have failed to show that they suffered any substantial prejudice as a result of the trial court's action in sustaining the State's objection to a single question asked of the complaining witness during cross-examination.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING, P J., and LEIGHTON, J., concur.