THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GERALD FRANKLIN LOGAN, Defendant-Appellant.

First District (1st Division)   No. 78-462

Opinion filed November 5, 1979.

James J. Doherty, Public Defender, of Chicago (Robert Guch and James L. Rhodes, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Mark F. Schroeder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Gerald Franklin Logan (defendant) was found guilty on two counts of possession of a controlled substance. (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b).) He was sentenced to 1 to 5 years. He appeals.

The issues defendant raises are limited to his motion to quash his arrest and suppress evidence. Defendant argues that his warrantless arrest was improper because the State failed to establish probable cause or exigent circumstances and the warrantless search of defendant's apartment and seizure of narcotics therein was unlawful.

■■ Defendant failed to raise any of these issues in his written motion for a new trial. His motion simply set forth in a general way that he did not receive a fair trial and requested a new trial "for the various reasons urged before and during the trial and every error as may appear from the official transcript of proceedings of the trial * * *." We have held that such a failure to specify alleged errors in a motion for new trial constitutes a waiver of these issues and they cannot be urged as a ground for reversal on review. (*People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856. See also *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 21, 337 N.E.2d 454, *appeal denied* (1976), 61 Ill. 2d 604.) We conclude that the defendant has waived all issues raised in his brief. However, for the sake of completeness, we will consider the merits of defendant's contentions.

Defendant made his motion to quash the arrest and suppress evidence at the preliminary hearing only. The motion was never raised at trial. Defendant testified that on September 29, 1976, at 12:15 a.m., a girl knocked on his door. When he opened the door, police officers "forced their way in." He was not shown an arrest or search warrant.

Officer Fournier testified that on the night in question he went to Mercy Hospital to question Lila Peterson, a narcotics overdose victim. He questioned her and her friend Alicia Lofthaus. He was able to question Patterson when she was coherent. She later lapsed into unconsciousness. A doctor informed the officer that Patterson suffered from a narcotics overdose. Officer Fournier stated the girls told him they obtained the drugs from a person named "Gerry" who lived at 5030 South Ashland. Alicia Lofthaus agreed to accompany Officer Fournier and his partner to point out the person from whom they obtained the drugs.

When they arrived, Lofthaus knocked on the back door and called out, "Gerry." Defendant opened the door and Lofthaus said, " '[t]hat is him'." The officers walked in and placed defendant under arrest for delivery of a controlled substance. Officer Fournier testified the officers did not force their way in. They "just walked in." As they were entering, "the narcotics were in plain view" on top of a refrigerator and on a kitchen table which was 6 to 7 feet from the back door.

The preliminary hearing judge found there was probable cause to make an arrest and that the narcotics were in plain view. He denied the motion to suppress.

In the trial court, the evidence shows that on the night of the arrest, at approximately 9:45 p.m., Officers Ruud and Gills responded to a radio call "of a woman down on the street" at 4829 South Ashland. There, they observed a woman (Lila Patterson) lying in the street and another woman (Alicia Lofthaus) "trying to hold her up." When Officer Gills approached the women, Lofthaus said Patterson was "sick." The officers thought Patterson was suffering from a drug overdose. They took the women to Mercy Hospital where Patterson was admitted to the emergency room. Officer Gills questioned Alicia Lofthaus and learned that Patterson had taken P.C.P. (phencyclidine). He called for a tactical unit and Officers Schultz and Fournier responded to the call. These officers questioned Patterson who "was going from consciousness to unconsciousness" and Lofthaus. Lofthaus agreed to accompany them to an apartment on 50th and Ashland and point out the person from whom they had obtained the drugs. Lofthaus told the officers that they would find pills in the apartment on the kitchen table; and a piece of white paper containing P.C.P. on top of the refrigerator.

At about 12 a.m. the four officers and Lofthaus went to the rear door of an apartment at 5030 South Ashland. Lofthaus knocked on the door. Someone inside said, "Who's there?" She responded, "Alicia." Defendant opened the door and Lofthaus identified him as "Gerry." Officer Fournier walked through the door into the kitchen, took defendant by the arm, placed him under arrest and advised him of his rights. Officers Ruud, Fournier and Gills all observed pills on the kitchen table and noticed a

white folded piece of paper on top of the refrigerator. The officers also saw a mirror, razor blades and straws on the table. Officer Fournier inspected the folded piece of paper and saw a yellow powder inside which he thought was P.C.P. Fournier seized the pills, powder and paraphernalia. A police chemist determined that the pills were secobarbital and the powder was phencyclidine.

■■ The first issue is probable cause to arrest defendant without a warrant. In motions to quash an arrest for alleged lack of probable cause, the burden of proof rests upon the moving party. (*People v. Ross* (1978), 60 Ill. App. 3d 857, 861, 377 N.E.2d 230.) The pertinent statute provides that a police officer may arrest without a warrant when "[h]e has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c).) The test here is subjective. The inquiry is whether " 'the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense.' " (*People v. Blitz* (1977), 68 Ill. 2d 287, 292, 369 N.E.2d 1238, *cert. denied* (1978), 435 U.S. 974, 56 L. Ed. 2d 68, 98 S. Ct. 1622, quoting from *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) Probable cause may be found upon inadmissible evidence and the facts which lead to a finding of probable cause "need not be sufficient to establish guilt beyond a reasonable doubt." *Blitz*, 68 Ill. 2d 287, 292.

■■ In the instant case the officers were directly and specifically informed by Patterson and Lofthaus that drugs had been obtained from the defendant, then identified as "Gerry." In the very presence of the officers, Lofthaus knocked on the door and established contact with the person inside known as "Gerry." When defendant opened the door, Lofthaus pointed him out and identified him for the police.

Furthermore, Alicia Lofthaus and Lila Patterson were not paid informers but were ordinary citizens. Where an ordinary citizen supplies information to a police officer his reliability need not be established as in the case of a paid informant. (*People v. Hoffman* (1970), 45 Ill. 2d 221, 226, 258 N.E.2d 326, *cert. denied* (1970), 400 U.S. 904, 27 L. Ed. 2d 141, 91 S. Ct. 142; *People v. Fisher* (1979), 76 Ill. App. 3d 331, 334, 395 N.E.2d 54; *People v. Lawson* (1976), 36 Ill. App. 3d 767, 770, 345 N.E.2d 41.) In addition, the information that these two ordinary citizens furnished the police was completely corroborated by subsequent events. Thus the police were fully and reliably informed concerning the incident even to the extent that they were told specifically they could find the drugs on top of the refrigerator and on the table in the defendant's premises. In our opinion, this proof was sufficient beyond reasonable doubt to establish probable cause and to authorize arrest of the defendant without a warrant.

Defendant next argues that exigent circumstances must exist to authorize police to enter a person's home without a warrant to make an arrest. However, in *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 159, 370 N.E.2d 1067, *cert. denied* (1978), 436 U.S. 908, 56 L. Ed. 2d 408, 98 S. Ct. 2243, our supreme court stated that "the United States Supreme Court has consistently reserved judgment on the constitutionality of a warrantless entry into a home to make an arrest absent exigent circumstances * * *." This court has refused to hold that exigent circumstances are required for a warrantless arrest in a private dwelling. (*People v. Bean* (1979), 73 Ill. App. 3d 918, 924, 392 N.E.2d 650.) We have held that the law in this area " 'must develop on a case by case basis.' " *Bean*, 73 Ill. App. 3d 918, 924; see also *People v. Villalobos* (1979), 78 Ill. App. 3d 6, 15, 396 N.E.2d 1081.

■■ In *Dorman v. United States* (D.C. Cir. 1970), 435 F.2d 385 (cited in *Bean*, 73 Ill. App. 3d 918, 924-25), the court stated the important factors bearing upon this issue:

"(1) the quality of the information which formed the probable cause for the arrest; (2) the nature of the offense charged; (3) the danger that the suspect might be armed; (4) the strength of the belief that the suspect is in the premises being entered; (5) the nature of the entry into the building; (6) the time of entry; and (7) the likelihood that the suspect will escape."

■■ Based on a consideration of these factors, we believe the arrest here was valid. While it is true the police had no reason to believe the defendant might be armed or he would be likely to escape, a review of the other *Dorman* factors demonstrates that the warrantless arrest of defendant in this instance was proper.

The quality of the information which formed the probable cause for defendant's arrest was very high. It was supplied by two ordinary citizens, one of whom was virtually a complainant or "victim" of the crime and it led the officers directly to the defendant.

The crime, while not a violent one, was still a dangerous felony. P.C.P. is classified as a hallucinogenic drug. It has been authoritatively stated that, "According to a consensus of drug treatment professionals, phencyclidine now poses greater risks to the user than any other drug of abuse." (See 6 Drug Enforcement 29 (Drug Enforcement Administration, U.S. Department of Justice, July 1979).) If the defendant was not immediately arrested, a number of persons might well have met the same fate as Lila Patterson. Possession of these drugs was an ongoing crime and the longer the defendant was free to give drugs to others, the more likely it was that another person would be the victim of a drug overdose.

The officers' belief that the suspect was in the premises being entered was also very strong since Lofthaus and Patterson had been in the

apartment only a few hours prior to the arrest. Furthermore, defendant's presence in the apartment was assured when he opened the door and was identified by Lofthaus as the person being sought. This was done before the police actually entered the apartment to effectuate the arrest.

While defendant testified that the officers forced their way into the apartment after he opened the door, the police officers testified they simply walked into the apartment. Even taking the defendant's version as true, the entry was not unreasonable. The door was already open, and the police were obliged to enter the apartment immediately or defendant might have destroyed the drugs which were in the room just a few feet from the door. No violence resulted from this entry.

The ease of destruction of the narcotics also excused the officers from any need to announce their office prior to the time the defendant opened the door. If the officers announced their office prior to this time, defendant could easily have disposed of the drugs in the kitchen. The failure of the officers to announce their authority and purpose was not unreasonable. See generally *Wolgemuth*, 69 Ill. 2d 154, 161-67.

The arrest of defendant at midnight was reasonable under the circumstances. The police officers went to the defendant's apartment as soon as they could. They did not intentionally wait until midnight to effectuate the arrest. It was 9:45 p.m. before Officers Gills and Ruud picked up Patterson and Lofthaus. By the time the two other officers had interviewed the two women, conferred with a member of the State's Attorney's Office, and driven to defendant's address, it was midnight. Given the fact that defendant might have destroyed or consumed the narcotics by the next morning, it was imperative for the officers to place the defendant under arrest as soon as possible.

It follows that upon application of the *Dorman* standards we arrive at the firm conclusion that the arrest here was proper and legal.

Finally, defendant contends that the warrantless search of his apartment and the seizure of narcotics found there were unlawful. In passing upon a pretrial motion to suppress physical evidence on the ground of an illegal search, the burden of proving that the search and seizure were unlawful is on the defendant. (Ill. Rev. Stat. 1977, ch. 38, par. 114—12(b). See also *People v. Berg* (1977), 67 Ill. 2d 65, 68, 364 N.E.2d 880.) In addition, "in passing upon a ruling by the trial court on a motion to suppress, a reviewing court may consider the entire record including additional testimony received at trial." *People v. Rendleman* (1978), 57 Ill. App. 3d 459, 463, 373 N.E.2d 509, *appeal denied* (1978), 71 Ill. 2d 604, and cases there cited.

In *Berg*, 67 Ill. 2d 65, 68, the supreme court defined a search as "a prying into hidden places for that which is concealed. Conversely, it is not a search to observe that which is in open view."

■■ The officers who arrested the defendant testified they saw pills on top of the kitchen table as they walked into the apartment. It is clear that the seizure of these pills was legal on the basis of the "plain view" doctrine. Since these pills "were readily visible to the officers who were on the premises for legitimate purposes they were not actually the subject of a 'search' as such and the officers had every right to seize them." *People v. Dennison* (1978), 61 Ill. App. 3d 473, 477, 378 N.E.2d 220.

Defendant argues that the narcotics were not discovered inadvertently because the officers knew where they would be and thus, under the holding of *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, these narcotics were not seizable under the plain view doctrine. However, *Coolidge* does not require officers "to ignore evidence lying about in the open, clearly visible. The officers are not required to be as the three monkeys who can 'see no evil'." (*Dennison*, 61 Ill. App. 3d 473, 477.) Therefore, the pills on the kitchen table were properly seized under the plain view doctrine.

The P.C.P. on top of the refrigerator in the kitchen was not itself in plain view. It was not "lying about in the open, clearly visible." The police officers testified they immediately saw a white folded piece of paper on top of the refrigerator. Lofthaus had told them the location of the paper and that it contained the P.C.P. Thus it was not until Officer Fournier inspected the paper that he actually saw the P.C.P. However, in our opinion, the P.C.P. was properly seized because the seizure was the product of a search incident to a lawful arrest.

Under *Chimel v. California* (1968), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, a search limited to the area within the defendant's immediate control at the time of the arrest is proper. In *People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506, our supreme court indicated that "there can be no hard and fast rule defining the permissible scope of a warrantless search incident to an arrest. * * *. Whether the search is reasonable must depend on the particular facts of the case."

Aside from the destructibility of these drugs, and their location under the immediate control of defendant, the seizure of the P.C.P. by the police under the circumstances here was simply reduction to possession of contraband narcotics, the presence and location of which had been fully and reliably disclosed to the police. The seizure of the P.C.P. was proper as the product of a search incident to a lawful arrest.

■■ In considering the rulings of the trial court to quash the arrest and to suppress physical evidence, we are required to affirm the conclusions reached by the trial court unless we can find them to be "manifestly erroneous." (*Williams*, 57 Ill. 2d 239, 246; *People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280.) In the instant case we cannot say that the result

reached by the trial court is manifestly erroneous. On the contrary, we conclude that the rulings of the trial court are supported by the evidence beyond reasonable doubt.

For the reasons above stated, the judgment is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.