THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES L. DEVINE, Defendant-Appellant.

Third District    No. 79-546

Opinion filed July 24, 1981.—Rehearing denied August 31, 1981.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant, James L. Devine, was indicted on charges of murder, felony murder, and armed robbery. Following the denial of defendant's motion to suppress evidence, quash arrest and suppress statements, the matter proceeded to a jury trial. Defendant was convicted of felony murder and armed robbery and acquitted of murder. He was thereafter sentenced to a 75-year term of imprisonment for felony murder and a consecutive 20-year term of imprisonment for armed robbery.

First among the 18 issues raised on appeal is the defendant's claim that the trial judge erred in denying his motion to quash arrest. Defendant's motion to quash arrest alleged that the officers, who did not have a warrant for defendant's arrest, did not have probable cause to arrest him. On appeal, defendant now asserts for the first time that the police violated his fourth amendment rights when they arrested him in the bedroom where he was staying without either an arrest or search warrant. Defendant's argument is premised upon the recent United States Supreme Court decision of *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371. The People maintain that the defendant has waived consideration of the argument by his failure to present the same in either his motion to quash or at the hearing on said motion or in his post-trial motion. Also presented with the People's waiver argument is their contention that the Supreme Court's decision in *Payton* should be given prospective application only.

■■ The accepted rule of appellate review states that an issue not raised before the court below is waived for appellate purposes. As stated by this court in *People v. Bullis* (1980), 85 Ill. App. 3d 693, 694, 407 N.E.2d 1100, 1102:

> "It is an accepted principle of law that an issue not presented to or considered by the trial court cannot be raised by the appellant

for the first time on review. * * * the trial court should be given an opportunity to consider the issues or theories which the appellant, on review, assigns as error in its judgment. The failure to urge a particular theory before the trial court will often cause the opposing party to refrain from presenting available pertinent rebuttal evidence on such theory, which evidence could have a positive bearing on the disposition of the case in both the trial and reviewing courts." Citing *People v. McAdrian* (1973), 52 Ill. 2d 250, 253-54, 287 N.E.2d 688, 690.

At the motion to quash hearing defendant argued that the police did not have a warrant for his arrest, and that the police did not have probable cause to make a warrantless arrest. Defendant failed to reveal the argument that regardless of whether the police had probable cause, the fourth and fourteenth amendments of the Federal Constitution prohibited the warrantless arrest of defendant in his bedroom unless there is either consent or exigent circumstances to justify proceeding without a warrant. It is apparent from the evidence and argument presented by defense counsel and from the trial judge's ruling on defendant's motion to quash that this issue was never presented to nor considered by the trial judge in deciding defendant's motion to quash. Consequently, defendant has waived this theory.

The trial judge's denial of defendant's motion to quash arrest was rendered on April 5, 1979. *Payton* was decided on April 15, 1980. Thus, a necessary adjunct of the waiver issue is the consideration of Payton's applicability, that is, whether the decision applies prospectively or retroactively. The People contend that *Payton* should be applied prospectively and would therefore be inapplicable to this appeal.

■■ It has been consistently held that there is no inflexible constitutional rule requiring in all circumstances either absolute retroactivity or complete prospectivity for decisions construing the broad language of the bill of rights. (*Williams v. United States* (1971), 401 U.S. 646, 651, 28 L. Ed. 2d 388, 394, 91 S. Ct. 1148, 1151.) The guiding criteria used to resolve this question concerns (a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.

Complete retroactive effect to a new rule is given, regardless of good faith reliance of law enforcement authorities or the degree of impact on the administration of justice, where the major purpose of the new constitutional doctrine is to overcome an aspect of the criminal trial that has substantially impaired its truth-finding function, thus raising serious questions about the accuracy of guilty verdicts in past trials. (*Williams*, 401

U.S. 646, 652-53, 28 L. Ed. 2d 388, 394-95, 91 S. Ct. 1148, 1152; *Adams v. Illinois* (1972), 405 U.S. 278, 280, 31 L. Ed. 2d 202, 207, 92 S. Ct. 916, 918.) It is quite a different matter, however, where the purpose of a new constitutional standard proscribing the use of certain evidence or a particular mode of trial is not to minimize or avoid arbitrary or unreliable results, but to serve other ends. In these situations the new doctrine raises no question about the guilt of defendants convicted in prior trials. (*Williams*, 401 U.S. 646, 652-55, 28 L. Ed. 2d 388, 394-96, 91 S. Ct. 1148, 1152-53.) It is apparent on analysis that all three factors which need be considered favor only the prospective application of the rule stated in *Payton.*

Foremost among these factors to be considered is the purpose to be served by the new constitutional rule. (*Witherspoon v. Illinois* (1968), 391 U.S. 510, 522, 20 L. Ed. 2d 776, 784-85, 88 S. Ct. 1770, 1777.) For a decision amplifying the evidentiary exclusionary rule, this criteria strongly supports prospective application only. (*Desist v. United States* (1969), 394 U.S. 244, 249, 22 L. Ed. 2d 248, 255, 89 S. Ct. 1030, 1033.) Furthermore, it should be observed that, in contrast with decisions which have accorded retroactive application, " 'there is no likelihood of unreliability or coercion present * * *' " in an unlawful arrest case. The exclusionary rule is but a " 'procedural weapon that has no bearing on guilt,' " and " 'the fairness of the trial is not under attack.' " *Desist*, 394 U.S. 244, 250, 22 L. Ed. 2d 248, 255, 89 S. Ct. 1030, 1034.

As applied to the instant case, the purpose to be served by the new standard set forth in *Payton* is to interpose the magistrate's determination of probable cause between the zealous officer seeking to make an arrest and the citizen's right to be secure in his own home as provided for by the fourth amendment. The court's ruling in *Payton* gave expanded fourth amendment protection against warrantless arrests. The purpose behind *Payton's* ruling casts no doubt upon the accused's guilt or innocence, but was implemented solely to deter official invasion of an individual's privacy rights protected by the fourth amendment. Thus, in considering the retroactivity of *Payton*, this court is dealing with a situation quite different from those where "emerging constitutional doctrine casts such doubt upon the soundness of some aspect of prior trials and that State and Federal Governments [are] disentitled from further pursuing the goals of their criminal law against defendants convicted in such prior trials." *Williams*, 401 U.S. 646, 654, 28 L. Ed. 2d 388, 395, 91 S. Ct. 1148, 1153.

Secondly, based upon Illinois statutory law, law enforcement personnel have undoubtedly relied in good faith upon their ability to arrest an accused without a warrant at his residence where the police have probable cause. Section 107—2(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 107—2(c)) provides that a peace

officer may arrest an individual when the officer "has reasonable grounds to believe that the person is committing or has committed an offense." In conjunction therewith, section 107—5(d) (Ill. Rev. Stat. 1977, ch. 38, par. 107—5(d)) provided that in making an arrest, "All necessary and reasonable force may be used to perfect an entry into any building or property or part thereof to make an authorized arrest." It is quite apparent that both statutes when read together provided that an officer could make a warrantless arrest, even in an accused's residence, as long as probable cause existed therefor. It is noteworthy to point out here that the United States Supreme Court in *Payton* found Illinois to be among the 24 States who permitted such warrantless entries and arrests. 445 U.S. 573, 598 n.46, 63 L. Ed. 2d 639, 658 n.46, 100 S. Ct. 1371, 1386 n.46. See also *People v. Ortiz* (1975), 35 Ill. App. 3d 283, 340 N.E.2d 714; *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, 365 N.E.2d 978; *People v. Logan* (1979), 78 Ill. App. 3d 646, 397 N.E.2d 504.

Finally, the effect of a holding of general retroactivity on law enforcement and the administration of justice would be significant. The warrantless arrest of an accused in his home has occurred in a very great number of cases. The number of convictions obtained in reliance on pre-*Payton* decisions is substantial. Moreover, a determination of whether a particular warrantless arrest was made with a defendant's consent or upon exigent circumstances would in most cases be a difficult and time-consuming task, if not virtually impossible. *Desist*, 394 U.S. 244, 250-51, 22 L. Ed. 2d 248, 256, 1030, 1034-35.

■■ In summary, we believe *Payton* should be given prospective application only.

A review of the record also leads us to conclude that the defendant has waived consideration of such issues as to whether defendant's brother's consent to search was voluntary (the defendant was arrested in an attic bedroom of a residence rented from his brother), and whether defendant had standing to raise the issue of an alleged illegal police entry into his brother's home.

Defendant's motion to quash was premised upon two basic grounds: (1) lack of a warrant; and (2) lack of probable cause. At the hearing on defendant's motion, evidence submitted by defendant directly related to the above-mentioned issues and nothing more. No evidence was presented concerning the issues dealing with standing and defendant's brother's consent in which he allowed the police to enter and search his residence for the defendant. It is equally apparent that the trial judge never ruled on these issues since the defendant has raised them for the first time on appeal. Accordingly, defendant has waived these issues. See *People v. Householder* (1980), 81 Ill. App. 3d 31, 400 N.E.2d 988; and *People v. Logan* (1979), 78 Ill. App. 3d 646, 397 N.E.2d 504.

■■ The officers in the case at bar had probable cause to arrest defendant. Independent evidence (defendant's fingerprints at the crime scene) had been gathered which linked the defendant to the murder. The search of the house was conducted with the consent of the owners. Moreover, the search of the adjoining storage area which uncovered much of the physical evidence admitted at defendant's trial was conducted only after defendant consented to a search, a consent that was given only after defendant had been advised of his *Miranda* warnings and also after he had been informed of his right to refuse to consent to such a search. The totality of the officers' actions in the case at bar was based upon probable cause and a reasonable belief that they could arrest defendant under the circumstances without a warrant.

The defendant also filed a motion to suppress physical evidence. The evidence sought to be suppressed consisted of items found in a storage room adjacent to defendant's sleeping room. Following a hearing the trial judge denied the motion. The denial was predicated on two grounds: (1) that defendant did not have standing to object to the search of the room adjacent to the one he allegedly rented from his brother; and (2) that defendant knowingly and understandingly consented to a search, thereby waiving any right to object. Defendant now attacks both rulings, claiming error. We believe the trial judge's ruling denying defendant's motion to suppress physical evidence was correct.

■■ As the trial judge aptly found, defendant's evidence established nothing more than the fact that defendant rented and used only one room, the upper front bedroom. No evidence was presented at the hearing to establish that the adjoining storage room was a closet for defendant's bedroom or that it was even used as such by the defendant. Hence, defendant failed to establish any legitimate or objectively reasonable expectation of privacy in the room where the search was conducted and the evidentiary items seized. *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421.

We also believe defendant freely and voluntarily consented to the search of the bedroom and adjoining storage area.

■■ In *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041, the United States Supreme Court dealt with the question of "voluntariness" as it relates to consent searches. The question of whether a consent to search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. (*Schneckloth*, 412 U.S. 218, 228, 36 L. Ed. 2d 854, 863, 93 S. Ct. 2041, 2048.) The trial court's determination of voluntariness of a consent is to be accepted on review unless its findings are clearly unreasonable. *People v. Ford* (1980), 83 Ill. App. 3d 57, 403 N.E.2d 512.

The evidence established that at approximately 1 p.m. officers began to search the residence of C. A. Devine in an effort to locate defendant. Defendant was found in an attic bedroom lying on a bed with his right arm extended under a pillow. An officer, upon observing defendant, yelled "Police officer, don't move." The two officers had their service revolvers drawn at the time. They immediately handcuffed defendant while he was lying in bed. Defendant was then read his *Miranda* warnings.

Approximately three to five minutes thereafter, a detective read to defendant a standard consent form that is used by the Peoria Police Department. The consent form informed defendant of his constitutional right not to have the police search the premises without first obtaining a search warrant. He was also told that he had the right to refuse to consent to a search of his premises. However, despite these rights, defendant was told that he could waive these rights and consent to a search. The consent form also contained a provision that defendant voluntarily and of his own free will and without any duress or promises having been made consented to the search.

The evidence also established that defendant was aware that the officers had requested to search the premises. Defendant remembered seeing the consent form and signing it in the bedroom on December 28. He also admitted that an officer read the consent form to him. After it was read to him, defendant signed it. In fact, the detective, after reading the form but before defendant signed it, asked defendant if he would consent to a search of the room, and defendant said that he would. At no time did the defendant ever give any indication to the officer that he did not understand the contents of the consent form that had been read to him or that he was unwilling to consent to a search. Prior to having had the form read to him, the handcuffs had been removed. Also, the officers' service revolvers had been holstered after defendant was handcuffed, and they remained holstered thereafter.

Under the totality of the circumstances here presented, the trial judge found that defendant's consent was voluntary and free from coercion. He noted specifically that defendant had signed a consent form allowing the police to search the entire premises, thereby waiving any right to object to a search of any part of the premises wherein he stayed. More importantly, the trial judge explicitly found that defendant's rights had been properly explained to him and the consent form read to him. He concluded that defendant understood his rights and the total meaning of the language of the consent form. Thus, defendant voluntarily, knowingly and understandingly consented to the search, thereby waiving any right he may have had to object thereto.

The other factor relied upon by defendant to support his argument is

his mental condition. He argues that due to his mental condition he did not understand that he did not have to let the police search the premises. The People contend that defendant's assertion that he did not understand that he had the right to refuse to allow the police to search his room is simply insufficient to support the contention now asserted.

■■ Although the capacity of the accused to understand what is told or read to him is an important factor, subnormal intelligence alone does not necessarily render an accused incapable of understanding or waiving his rights. (*People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466.) An accused is not incapable of understanding or waiving his constitutional rights merely because he is of low intelligence. *People v. Murphy* (1977),. 47 Ill. App. 3d 278, 361 N.E.2d 842.

In the case at bar, expert testimony was introduced which established that, despite his mental condition (borderline mentally retarded), the defendant was capable of understanding the total meaning of the *Miranda* rights as well as the consent waiver form that had been read to him. Although unable to read or write, the defendant was capable of printing his name. Although of low intelligence, the defendant was able to understand and answer all of the questions put to him by the police during the interrogation and by both the prosecutor and defense counsel during the various hearings at which he testified. The evidence was sufficient to justify the trial judge's finding that defendant voluntarily and knowingly consented to the search, thereby waiving his right to object thereto. See *People v. Carpenter* (1976), 38 Ill. App. 3d 435, 347 N.E.2d 781.

■■ A voluntary consent to an otherwise unreasonable search and seizure waives the constitutional privilege and the evidence derived therefrom is admissible at trial. (*People v. Ledferd* (1967), 38 Ill. 2d 607, 232 N.E.2d 684.) The fourth amendment does not require that every search be made pursuant to a warrant. Rather, it prohibits only unreasonable searches and seizures. The relevant inquiry is not the reasonableness of the opportunity to procure a warrant, but the reasonableness of the seizure under all of the circumstances. (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 509, 29 L. Ed. 2d 564, 608, 91 S. Ct. 2022, 2060.) In light of the foregoing, we believe that the defendant did in fact voluntarily consent to the search, and that the officers' inquiry of defendant in this situation constituted reasonable conduct within the context of the fourth amendment. The trial judge observed the witnesses, their demeanor while testifying, and their candor and sincerity. He was in a better position than we to evaluate not only the credibility of the witnesses, but also the evidence presented with respect to the defendant's consent to search.

Defendant argues that the withdrawal of his motion for a competency hearing denied him due process of law. The issue has been waived.

■■ In order for error to be brought to the attention of the reviewing court, it must be preserved. (*People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577.) Error is preserved either by objection at the proper time or filing of a post-trial motion. If a post-trial motion is filed, any errors not set forth in the motion are deemed waived. (*People v. Dimond* (1977), 54 Ill. App. 3d 1036, 370 N.E.2d 686.) The failure to object or include the error in the post-trial motion results in the waiver of the issue on appeal. (*People v. Miller* (1977), 46 Ill. App. 3d 882, 361 N.E.2d 373.) The record in the case at bar clearly shows that defendant has waived the issue by failing to object either at trial or in his post-trial motion.

Under the facts presented, defendant's due process rights were not violated as a result of the trial judge's granting of defendant's motion to withdraw his earlier motion for a competency hearing. Therefore, no error occurred.

Defendant was convicted of both felony murder and armed robbery and sentenced to consecutive terms of imprisonment. The underlying felony used to establish the felony murder was the armed robbery. Defendant argues that his conviction for the underlying offense of armed robbery was improper. He contends that armed robbery is an included offense of felony murder. As such, he asserts that the armed robbery conviction must be vacated.

In Illinois a lesser included offense is statutorily defined as follows:

"Included offense. 'Included offense' means an offense which

(a) Is established by proof of the same or less than all of the facts *or* a less culpable mental state (*or both*), than that which is required to establish the commission of the offense charged, *or*

(b) Consists of an attempt to commit the offense charged *or an offense included therein.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 2—9.)

Felony murder in Illinois is defined as:

"A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

❋ ❋ ❋

(3) He is attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(3).)

Forcible felony is defined as follows:

" 'Forcible felony' means treason, murder, voluntary manslaughter, rape, *robbery,* burglary, arson, kidnaping, aggravated battery and any other felony which involves the use or threat of physical force or violence against any individual." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 38, par. 2—8.

In the case of felony murder the underlying felony is a lesser included offense because the felony, which in the case at bar was armed robbery, is established by proof of the same or less than all of the facts required to establish the offense of murder in the course of an armed robbery. This form of a lesser included offense has been further defined judicially as " 'one composed of some, but not all of the elements of the greater offense, and which does not have any element not included in the greater offense [citation] so that it is impossible to commit the greater offense without necessarily committing the lesser offense.' " *People v. Hobson* (1979), 77 Ill. App. 3d 22, 29, 396 N.E.2d 53, 59; *People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197.

■■ For the foregoing reasons the defendant's armed robbery conviction is vacated. Our decision necessarily eliminates defendant's claim of error with regard to the consecutive sentence imposed as a result of said conviction.

With respect to defendant's contention that the trial court erred in imposing an extended term of imprisonment (75 years), we note that the defendant was charged with two counts of murder. One count alleged that defendant shot the victim knowing such act created a strong possibility of death or great bodily harm to the victim. The other count charged defendant with felony murder. The jury convicted the defendant of the latter charge, but acquitted him on the former. After entering judgment thereon, the trial judge set the matter for a sentencing hearing.

At the conclusion of the sentencing hearing, the trial judge ruled *inter alia* that an extended-term sentence for the murder conviction was appropriate in this case, finding that the instant offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. It is this portion of the trial judge's sentencing determination which defendant now objects to.

Defendant argues that the trial judge's finding in this regard is inconsistent with the jury's acquittal of the defendant for the offense of murder alone, *i.e.*, it is alleged that the jury found that the defendant did not act with the knowledge that he would cause serious bodily injury or death to the victim.

■■ There is no inconsistency between the jury's verdict and the trial judge's finding with reference to the applicability of the extended term sentencing provisions. The jury found that the evidence did not sustain a finding of guilt for the simple offense of murder. The trial judge's determination did not focus on the sufficiency of the evidence needed to convict or acquit. Rather, the trial judge focused on the facts surrounding the offense and whether those facts were indicative of wanton cruelty, that is whether defendant's conduct was of such a malicious, thoughtless,

and inhumane nature or maligned character that they depicted a reckless disregard of the rights or safety of others.

The evidence established that an armed robbery occurred at the Caroline Motor Lodge in which $90 was taken. During the course of the armed robbery the clerk, George Sexauer, was murdered. He was shot twice. The autopsy also revealed stab wounds to the back of the victim's head. The stab wounds numbered seven in all, six of which were deep enough to penetrate the skull.

From this state of the record, defendant contends that the trial judge erred in factually determining that the defendant's conduct in the instant offense was exceptionally brutal or heinous and thus indicative of wanton cruelty. He bases his contention upon the proposition that since the victim was already dead as a result of the gunshot wound, the subsequent acts of stabbing the victim seven times in the head played no significant feature in the death of the victim. Defendant argues that evidence of the stabbing must necessarily be discounted in evaluating the brutality of the instant offense. He concludes that "once the victim died * * * it became impossible to cause him pain or distress."

■■ We believe that in evaluating the brutality and heinousness of an offense, the entire spectrum of facts surrounding the given incident must be analyzed and evaluated. At the time of the commission of the crime the victim was no corpse, but rather a living obstacle between the defendant and ready cash. Thus, irrespective of whether the victim was actually dead at the time of the stabbings, the defendant's act of stabbing him seven times after shooting him twice adequately speaks for itself.

The defendant's limited and piecemeal "cruel to a corpse" argument must be rejected. His argument is premised upon the hindsight use of the medical testimony offered at trial. Defendant uses the apparent instant death of the victim to impart to himself an advantage which is neither contemplated by the law nor allowed by public policy, and which cannot be recognized by this court.

The facts clearly support the trial judge's conclusion, and no error occurred that would require the vacation of the defendant's extended term sentence.

Defendant contends that the wanton cruelty factor in section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2)) is unconstitutionally vague.

An analogous situation was presented in *People v. Nobles* (1980), 83 Ill. App. 3d 711, 404 N.E.2d 330, in which defendant attacked the constitutionality of the statutory criteria for imposing a life sentence. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1).) In *Nobles* the defendant focused upon the following language:

"* * * [O]r, if the court finds that the murder was accompanied by *exceptionally brutal or heinous behavior indictive of wanton cruelty* * * * the court may sentence the defendant to a term of natural life imprisonment." (83 Ill. App. 3d 711, 715, 404 N.E.2d 330, 354.)

Defendant argued that this language was unconstitutionally vague and ambiguous.

The court rejected defendant's constitutional attack, finding the language neither vague nor ambiguous. They held:

"The totality of the words used together requiring either the 'brutal' or the 'heinous' behavior to indicate 'wanton cruelty' gives reasonable guidance to the average person and is of a design which would tend to avoid arbitrary enforcement." 83 Ill. App. 3d 711, 716, 404 N.E.2d 330, 335. See also *People v. Merchel* (1980), 91 Ill. App. 3d 285, 414 N.E.2d 804.

■■ We believe that the instant sentencing factor is neither unconstitutionally vague nor ambiguous. The language here objected to is identical to the language objected to in *Nobles*, which was found sufficient to withstand a constitutional vagueness attack.

In sentencing defendant to an extended term of imprisonment, the trial judge specifically enumerated a number of statutory factors in aggravation as provided in section 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2):

"(a) The defendant was responsible for inflicting serious bodily injury to another person causing the death of that person;

(b) The defendant received compensation for committing the offense;

(c) The defendant has a history of delinquency and criminal activity; and

(d) That the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

Defendant contends the trial court erred in considering as an aggravating factor that the defendant received compensation for committing the instant offense. The basis of the trial judge's consideration of this factor was that the defendant took approximately $90 from the deceased.

The State acknowledged at oral argument that "compensation" within the meaning of the foregoing statute has recently been interpreted by the supreme court to mean payment, *i.e.*, commission of the crime for hire as opposed to merely receipt of the proceeds from the commission of the offense itself. *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.

Notwithstanding the foregoing, we believe the existence of the other factors in aggravation, *i.e.*, (1) the infliction of serious bodily injury to another causing the death of that person; (2) the defendant's history of

criminal activity (prior convictions for theft, obstruction of a police officer and robbery); (3) defendant's exceptional brutal and heinous behavior indicative of wanton cruelty, when considered together, cumulatively support the imposition of an extended term of imprisonment.

■■ Sentencing is a matter of judicial discretion, and absent an abuse of discretion on the part of the trial judge, a sentence may not be altered upon review. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) When a reviewing court is requested to exercise its power to reduce a sentence, that power is to be exercised cautiously, and the standard for determining whether a reduction is necessary is not merely judicial clemency. (*People v. Clark* (1980), 82 Ill. App. 3d 490, 402 N.E.2d 437.) Sentencing is properly the function of the trial court, and a reviewing court should not substitute its judgment for that of the trial court unless there has been a clear abuse of discretion. *People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182.

■■ The record establishes that the trial judge reviewed all of the evidence received at trial, the presentence report, evidence and information offered in aggravation and mitigation. He considered this evidence as it related to defendant's life, character, age, physical and mental condition, social environment, family, occupation, and past record of criminality. The trial judge likewise considered the arguments and sentencing alternatives as expressed by respective counsel. Based upon the nature and circumstances of the offense and the history and character of defendant, the trial judge determined that a higher than minimum term of imprisonment should be set. We do not consider the imposition of the sentence by the trial judge to have constituted a breach of discretion.

For the foregoing reasons, the defendant's conviction and sentence for felony murder are affirmed. The defendant's conviction for armed robbery is reversed and his sentence for said offense vacated.

Judgment affirmed in part, reversed in part.

HEIPLE and STOUDER, JJ., concur.