THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JIMMY DRUMMOND, Defendant-Appellant.

Fifth District    No. 79-497

Opinion filed August 18, 1980.

John H. Reid and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Martin N. Ashley and William S. Zale, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

The defendant, James Drummond, appeals his conviction for murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(1)) before a jury of his peers in the circuit court of St. Clair County on May 23, 1979. The central issue at trial and on appeal involves the affirmative defense of insanity. Drummond maintains that it was error for the court below to refuse his tendered instructions regarding insanity based upon pertinent evidence presented at trial and that it was erroneous to deny the admission in evidence of lay opinion testimony concerning the defendant's sanity prior to the shooting. It is also argued that a possible conflict of interest on the part of defense counsel was alluded to in the course of testimony, that the defense counsel precluded its explication by objection, and that the cause should be remanded to fully explore the alleged conflict. We affirm the court below.

The regrettable events which led up to the tragic violence involved in this case began on the morning of July 18, 1978. The defendant, employed as the produce manager of a Tri-City Grocery Store in East St. Louis, Illinois, was the third-ranking management employee in the store and had been associated with the company for some eight years. At approximately 10 a.m. Drummond was informed that he was being dismissed because he had violated a company rule against using a store telephone for personal toll calls. The defendant alleged that the cited reason was a pretext to cover the management's genuine motivation, that of replacing him with an employee from another of the company's stores which was scheduled to be closed shortly. Several discussions followed between Drummond and management supervisors within the store, and later, two higher

company officials came to the store to discuss the firing. Prior to their arrival the defendant had left the store and returned, having imbibed both alcohol and marijuana in the interim. After all his attempts to prevail upon them failed, the defendant drove away in a highly distraught condition. He stopped the car only 50 yards from the store, took a pistol from the trunk, and then made his way back to the front of the building on foot. He met the victim, Vance Morgan, and another store official, Rex Cress, exiting through the store's automatic doors. Holding his gun on both, the defendant followed the two as they backed into the front lobby where Morgan suggested they discuss the matter further. The assailant replied, saying, "You took it, you are taking the food out of my boy's mouth, and it is too late for talk," and shot Morgan to death as he crouched in the end of one of the check lanes. Then Drummond attempted to find and shoot Cress who had fled out the rear of the store. Unable to find him within the store, the defendant left, discarded the gun, and drove to his home where police arrested him minutes after his arrival.

The only issue in contention at trial was the defendant's mental state during the commission of the crime. In essence the defense attempted to establish that due to economic difficulties and serious marital problems in the weeks prior, the defendant was suffering from what a psychiatrist testified was reactive neurotic depression, a mental disease, which it argued substantially impaired his ability to conform his conduct to the requirements of law. (See Ill. Rev. Stat. 1977, ch. 38, par. 6—2(a).) In addition to expert testimony Drummond attempted to show mental disease through the testimony of other store employees who witnessed the incident or who had spoken to the defendant that morning. We will review both strains of this evidence in greater detail below. During an instruction conference held after the defense rested, the court denied defense counsel's tendered instructions defining and placing in issue the defense of insanity (IPI Criminal Nos. 24.01 and 25.01). Subsequently, the jury found defendant guilty of murder, and he was sentenced by the court to a 25-year term of imprisonment.

■■ First, turning to the issue of the refused jury instructions, it is the position of the appellant that sufficient evidence calling into question the sanity of the defendant was entered at trial to support the submission of the issue to the jury. The exculpating excuse of insanity is an affirmative defense. (*People v. Jackson* (1978), 57 Ill. App. 3d 809, 814, 373 N.E.2d 583; Ill. Rev. Stat. 1977, ch. 38, par. 6—2.) According to the statutory definition of its operative effect, an affirmative defense must be raised by the defendant through the presentation of "some evidence," unless prosecutorial evidence has first called it into issue. (Ill. Rev. Stat. 1977, ch. 38, par. 3—2.) Although there is a conflict among the authorities regarding the threshold quantum of evidence required to warrant instructing the

jury as to affirmative defenses in general (*People v. Creach* (1979), 69 Ill. App. 3d 874, 896, 904, 387 N.E.2d 762; see, *e.g., People v. White* (1979), 78 Ill. App. 3d 979, 981, 397 N.E.2d 1246 (necessity); *People v. Adcock* (1975), 29 Ill. App. 3d 917, 919, 331 N.E.2d 573 (compulsion)), it is the settled law of this State that the defense of insanity must be supported by evidence which raises a reasonable doubt concerning the accused's sanity. (*People v. Redmond* (1974), 59 Ill. 2d 328, 338, 320 N.E.2d 321; *People v. Smothers* (1973), 55 Ill. 2d 172, 174-75, 302 N.E.2d 324.) We are bound by the same measure of proof in reviewing the refusal of jury instructions on this issue. *People v. Smothers* (1973), 55 Ill. 2d 172, 175; *People v. Proper* (1979), 68 Ill. App. 3d 250, 253, 385 N.E.2d 882; *People v. Gilley* (1976), 40 Ill. App. 3d 824, 827, 353 N.E.2d 88.

■ By this standard we cannot say that the court below was in error because it denied the instructions involved. To begin with, the testimony of the defendant's single expert witness was highly equivocal. Dr. Peter Heinbecker, a psychiatrist, offered the following in response to a hypothetical question on whether the defendant was suffering from a mental defect or disease at the time of the shooting, the product of which substantially impaired his ability to conform his conduct to the requirements of law:

"A. Well, I feel that to a certain extent, the defendant was not able to control his conduct at that time, and that the depression played a part in it, but I feel the anger at being fired was the more important element in the loss of control, which he displayed by shooting somebody in front of 16 or 20 people.

* * *

When I think of substantial in that term, what I am thinking of is if the depression alone were there, would that have resulted in the loss of control, and I don't believe that the depression alone would have been sufficient to result in the loss of control. I feel that the result and anger at being fired was the more substantial part of what happened.

Q. All right. And do you feel that the anger was a product of the mental defect that you found in the defendant?

MR. ENGLISH: He has already answered that question.

THE COURT: I don't believe he has. He may answer.

A. Well, I think that the depression influenced the anger, but I think that the anger was not totally resulted [*sic*] the depression. I think it was basically, and most importantly a result of his being fired in the manner in which he was fired."

And upon cross-examination:

"Q. Well Doctor, again what mental disease or defect did Mr. Drummond have?

A. I felt he had a reactive depression, as I described to the financial situation, and then the firing exacerbated it.

Q. How common is reactive depression?

A. It is very common, say 20 per cent of the population suffers from it at one time during their lifetime.

Q. Would that in itself cause someone to go out and shoot somebody?

A. No.

Q. Or lose control of themselves?

A. No.

Q. Now Doctor, when you say Mr. Drummond—isn't it a fact that you felt that prior to the shooting he was suffering from a mild reactive depression?

A. Yes.

Q. What do you mean by the word 'mild'?

A. Well, I mean that it was not interefering with his ability to carry on his normal task, business, and interpersonal task to any significant extent.

Q. Would it interfere with his right to know right from wrong?

A. No."

While there are other references to reactive depression as constituting a mental disease, we find the above evidence inconclusive in raising a reasonable doubt of sanity.

In his brief appellant argues that other testimony elicited at trial is indicative of insanity. About a week prior to the shooting defendant had beaten his wife to the degree where she had required hospitalization. It was asserted that this was completely uncharacteristic behavior since he had never struck her before in seven years of marriage. After the incident defendant's wife informed him that she wanted a divorce. Counsel attempted to show that a garnishment action and repossession of his car along with these marital problems combined to create the depression.

■■ The balance of the evidence presented consists of descriptive testimony. Various employees who saw and spoke with the defendant after the dismissal and around the time of the murder observed that he appeared stunned, red-eyed, nervous, that his face appeared distorted, that he was very upset and "just lost all control of himself," etc. While the testimony of laymen may be used to substantiate this defense, evidence of idiosyncratic or distorted behavior, irresponsible or bizarre conduct, unrealistic judgments, or the commission of atrocious crimes will not alone justify a reasonable doubt of sanity. (*People v. Varnado* (1978), 66 Ill. App. 3d 413, 419, 384 N.E.2d 37; *People v. Jackson* (1978), 57 Ill. App. 3d 809, 815; *People v. Harrington* (1974), 22 Ill. App. 3d 938, 945, 317 N.E.2d 161.) We do not believe that the evidence referred to above was

either qualitatively or quantitatively sufficient to raise a reasonable doubt of the defendant's sanity.

Appellant cites *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6, for the proposition that expert opinion, as in this case, based upon a 90-minute interview approximately 18 months after the commission of the crime charged was sufficient in that case to shift the burden of proof to the State. But, as the State properly argues, Foster's expert presented unequivocal evidence of insanity, unlike the present testimony. Further, we cannot agree with the appellant that the evidence in the case at bar was "at least as strong as that judged sufficient in *Foster*." The behavior of the defendant in that case exhibited mental disturbance of a far more extreme nature. Foster, a transsexual, had lived with the decedent for approximately 2½ years at the time of her death, and there was evidence that the murder was motivated by a desire for continuing sexual contact with the victim's 12-year-old son. Following the murder he concealed the corpse in a bedroom of their home for three weeks. In addition, he attempted suicide while in custody. Nothing in the tenor or amount of evidence in the present case is remotely similar.

Nor is *People v. Rea* (1977), 47 Ill. App. 3d 353, 362 N.E.2d 1, cited by the appellant, apposite to the present facts. There the accused was hospitalized for psychiatric care a week after the attempted murder in question and underwent extensive psychiatric evaluation. His doctor testified that Rea's condition was of a severe depressive nature and that he had been insane in the months before, during and after the incident. In addition, the defendant had sought psychiatric help before the commission of the crime. Facts regarding his behavior up to the time of the killing illustrated a hysterical state of mind, including an attempt to shoot himself in front of his brother.

The appellant next contends that the trial court erroneously denied opinion testimony offered by lay witnesses concerning the defendant's sanity. While it appears that the objection sustained went not to the content of the testimony sought to be elicited, but rather to the form of the questions, the argument is nevertheless waived for failure to preserve the issue in the post-trial motion. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

Appellant also alludes to a conflict of interest which might have denied the defendant effective assistance of counsel. It is not argued that the conflict actually existed, but rather that a possible conflict was prevented from being elucidated due to defense counsel's objection during cross-examination of the defendant. Appellant seeks a remand to explore the nature and extent of this apparent conflict. We again note that the defendant has failed to preserve this allegation of error in his post-trial motion. Since it does not appear to present a situation constituting plain

error, we deem the issue waived. *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.

Finally, appellant appears to allege in an additional pro se brief that he was denied a fair trial because he received no competency hearing following his indictment. There is no indication in the record that the issue was ever raised prior to the present appeal and since defendant's post-trial motion makes no mention of the issue it is waived. (*People v. Foster* (1979), 76 Ill. 2d 365, 380, 392 N.E.2d 6.) Accordingly, we affirm the judgment of the circuit court of St. Clair County.

Affirmed.

JONES, P. J., and KASSERMAN, J., concur.