**UNITED STATES of America, ex rel. Joseph MERNEIGH, Petitioner-Appellant,**

v.

**James GREER, Warden of Menard Correctional Center, and Michael Lane, Director of Department of Corrections, Respondents-Appellees.**

No. 83–1954.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1985.

Decided Aug. 29, 1985.

Gabrielle L. Sigel, Jenner & Block, Chicago, Ill., for petitioner-appellant.

Jack Donatelli, Deputy Atty. Gen., Chicago, Ill., for respondents-appellees.

Before WOOD and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.

FLAUM, Circuit Judge.

Petitioner Joseph Merneigh appeals the district court's denial of his petition for a writ of habeas corpus, arguing that his constitutional rights were violated at his trial in state court on charges of rape and deviate sexual assault when (1) the prosecutor used his silence at prior court-ordered fitness examinations in order to rebut his insanity defense, and (2) the court midway through trial ordered him to submit to an examination concerning his sanity at the time of the offenses and then allowed the psychiatrist who conducted the examination to testify against him. The district court rejected both of these contentions on the merits. For the reasons set forth below, we find that the first contention has been waived, reject the second contention on the merits, and therefore affirm the district court's denial of the petition.

### I.

Although petitioner was arrested on rape and deviate sexual assault charges in November 1973, he was not brought to trial for nearly three years as a result of a series of psychiatric examinations and judicial hearings at which he was found unfit to stand trial. Petitioner was examined for fitness numerous times by several psychiatric physicians, including Dr. Werner Tuteur and Dr. Lyle Rossiter, Jr. These physicians concluded from their early examina-

tions that petitioner was unfit for trial, and courts concluded likewise after three separate fitness hearings held prior to 1976. At a fitness hearing held before a jury in January 1976, however, Doctors Tuteur and Rossiter testified that they had concluded from more recent examinations that petitioner was no longer unfit, and the jury accordingly returned a verdict finding him fit to stand trial.

During the period between this final fitness hearing and the trial in September 1976, petitioner and the state filed various motions and exchanged various documents relating to pre-trial discovery. In March, petitioner filed both a *pro se* motion notifying the state that he might rely on an insanity defense at trial [1] and an answer to the state's discovery requests indicating his intent to call two psychiatrists as witnesses. The state, however, did not then file a motion with the court to have petitioner examined concerning his sanity at the time of the crimes. While petitioner on several occasions stated his intention to call particular psychiatrists as witnesses for the defense, it was not until July 28 that petitioner first listed one of the doctors who had previously examined him for fitness—Dr. Rossiter—as a witness for the defense.

At a hearing held on August 3, the state then notified petitioner that in light of its receipt of a preliminary report from Dr. Rossiter, the state might later request the

---

**1.** Petitioner filed this notice pursuant to Ill.Rev. Stat. ch. 38, § 115–6 (1975) which provides a system of reciprocal discovery by the defendant and the state concerning a defendant's insanity defense. That section provided as follows:

> If the defendant has given notice that he may rely upon the defense of insanity as defined in Section 6–2 of the Criminal Code of 1961 or the defense of intoxicated or drugged condition as defined in Section 6–3 of the Criminal Code of 1961 or if the facts and circumstances of the case justify a reasonable belief that the aforesaid defenses may be raised, the Court shall, on motion of the State, order the defendant to submit to examination by at least one psychiatrist, to be named by the prosecuting attorney. The Court shall also order the defendant to submit to an examination by one neurologist, and one electroencephalographer to be named by the prosecuting attorney if the State asks for one or more of such additional

examinations. The Court may order additional examinations if the Court finds that additional examinations by additional experts will be of substantial value in the determination of issues of insanity or drugged conditions. The reports of such experts shall be made available to the defense. Any statements made by defendant to such experts shall not be admissible against the defendant unless he raises the defense of insanity or the defense of drugged condition, in which case they shall be admissible only on the issue of whether he was insane or drugged. The refusal of the defendant to cooperate in such examinations shall not preclude the raising of the aforesaid defenses but shall preclude the defendant from offering expert evidence or testimony tending to support such defenses if the expert evidence or testimony is based upon the expert's examination of the defendant.

court to order another psychiatric examination of the petitioner. The court, the state, and the petitioner also agreed at this hearing to schedule trial to begin on September 20, 1976. On September 10, the state submitted, and the court granted, a motion to have petitioner examined by a new psychiatrist, Dr. Vladimir Urse. Finally, in a supplemental discovery document filed on September 15, the state listed Dr. Urse as a witness for the prosecution.

Jury selection for petitioner's trial began as scheduled on September 20. On that day, the state filed a supplemental discovery document listing as a rebuttal witness for the prosecution Dr. Tuteur, the other doctor who had examined petitioner for fitness. Trial began the next day as the state gave an opening statement, while the defense waived the giving of such a statement. The state introduced thirteen exhibits and called six witnesses, including the complainant, to establish the occurrence of the crimes and petitioner's participation therein. Petitioner's counsel cross-examined only three of these witnesses, and agreed to the admission of all of the exhibits save one, which was admitted over objection. With this evidence, the state completed its case-in-chief, and trial was adjourned until the next day.

When trial resumed on the afternoon of September 22, the state informed the court that Dr. Urse had become ill and would be unable to testify. The state thus requested that the court order petitioner to submit to another psychiatric examination by Dr. Tuteur and that petitioner's trial be continued until the afternoon of September 27. The court granted the state's request over the objection of defense counsel. After the court reconvened on September 27, petitioner presented a *pro se* motion requesting the court to exclude Dr. Tuteur from testifying regarding his most recent psychiatric examination of petitioner, or alternatively to grant a mistrial. Petitioner stated in this motion that when Dr. Urse examined him on September 18, 1976, the doctor told him that he should be in a mental hospital. Petitioner claimed that he interpreted Dr. Urse's statement to mean that the doctor would testify for the defense, and that in reliance on this fact he decided to forego a defense of consent, declined the opportunity to make an opening statement, and withdrew pretrial motions that he had previously filed.

The state responded to petitioner's motion by submitting a letter from Dr. Urse wherein the doctor indicated, among other things, that petitioner's conduct as described by the complainant was inconsistent with the delusion that petitioner claimed to have been suffering from at the time of the crimes. The court denied petitioner's motion, and the state rested its case. The defense called as its sole witness Dr. Rossiter, who testified that petitioner was legally insane at the time of the offense, and that petitioner's conduct resulted from an elaborate delusion that petitioner described to him during a psychiatric examination in July 1976. The prosecution cross-examined Dr. Rossiter in part by eliciting from him the fact that petitioner had not related this delusion to him during a pre-trial fitness examination that the doctor had conducted in February 1975. Petitioner's counsel did not object at trial to this cross-examination.

Finally, the state called the complainant and Dr. Tuteur as witnesses in rebuttal of petitioner's insanity defense. Dr. Tuteur testified that in his opinion, petitioner was not legally insane at the time of the crimes. Furthermore, again with no objection from the defense, Dr. Tuteur stated that during four pre-trial fitness examinations that he had conducted, petitioner never described to him the delusion that petitioner later claimed to have suffered from at the time of the offenses. After the state concluded its rebuttal case, the prosecutor made a closing argument to the jury emphasizing petitioner's failure to mention his supposed delusion at numerous pre-trial fitness examinations as evidence that the delusion was a recent fabrication. Once again, the defense lodged no objection to the prosecutor's argument.

The jury ultimately returned verdicts of guilty on both the rape and the deviate sexual assault charges, and petitioner was sentenced to a twenty- to sixty-year term of imprisonment for each offense, the terms to run concurrently. Petitioner argued in a post-trial motion for a new trial that the court had erred in allowing Dr. Tuteur to testify against him, but did not specifically contend that the state's use of his silence at pretrial fitness examinations was improper. The trial court denied this motion as well as petitioner's other post-trial motions.

On appeal to the Illinois Appellate Court, petitioner raised both the allowance of Dr. Tuteur's rebuttal testimony and the state's use of his silence at prior fitness examinations as grounds for reversal. The Illinois Appellate Court affirmed in an unpublished order. With respect to Dr. Tuteur's rebuttal testimony, the court stressed that petitioner was not unfairly surprised by this testimony in light of the state's inclusion of the doctor on the witness list that was given to the defendant on the first day of trial. As to petitioner's objection to the state's use of his prior silence, the court stated initially that petitioner had not properly preserved this issue for appeal based on his failure to make appropriate objections either at trial or in his post-trial motions. Nevertheless, noting that under Illinois law an appellate court may consider errors that were not properly preserved if the errors are plain, the court went on to discuss the merits of petitioner's claim and to conclude that the use of his prior silence did not constitute error and did not violate his constitutional rights.

After his petition for leave to appeal was denied by the Illinois Supreme Court, petitioner filed the instant habeas petition in the district court on March 31, 1982. Respondents moved for summary judgment, and in an unpublished memorandum decision issued on January 18, 1983, the court granted the motion and dismissed the petition. *United States ex rel. Merneigh v. Greer*, No. 82 C 1987 (N.D.Ill. Jan. 18, 1983). The court concluded that petitioner's due process rights to a fair trial were

not violated by Dr. Tuteur's testimony for essentially the same reasons stated by the Illinois Appellate Court, holding that petitioner "was not unnecessarily or unreasonably prejudiced by the state's engagement of a substitute psychiatrist, and that petitioner's constitutional rights ... were not violated by this procedure." *Id.*, slip op. at 3. With regard to petitioner's challenge to the state's use of his prior silence at fitness examinations, the court first observed that "[a]lthough petitioner did not preserve a record in the trial court on the question of violation of his Fifth Amendment rights, the Illinois Appellate Court did pass on the issue in detail." *Id.* at 5. The court then proceeded to reject petitioner's claim on the merits, stressing that the reference to petitioner's silence "was not prejudicial when made in the context of an insanity defense." *Id.*

## II.

Petitioner's most significant contention on appeal is that the prosecution violated his due process rights under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), by using his silence at pre-trial fitness examinations to rebut his insanity defense at trial. Respondents initially answer this contention by arguing, as they argued below, that petitioner has waived his right to raise this issue on habeas review by failing to object to the prosecution's allegedly unconstitutional conduct either at trial or in a post-trial motion, as required by Illinois law. Respondents thus attempt to invoke the general rule that a state prisoner who is barred by a state procedural rule from raising a constitutional claim on direct appeal likewise cannot assert that claim as a basis for federal habeas relief. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977); *Farmer v. Prast*, 721 F.2d 602, 605 (7th Cir.1983). Petitioner, on the other hand, seeks to bring this case within the exception to this rule for cases where the state essentially excuses a defendant's procedural default relative to a given claim by disposing of that claim on

the merits rather than relying on the default in deciding the defendant's direct appeal. *See, e.g., County Court of Ulster County v. Allen,* 442 U.S. 140, 152–53, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1979); *United States ex rel. Saulsbury v. Greer,* 702 F.2d 651, 653 (7th Cir.), *cert. denied,* 461 U.S. 935, 103 S.Ct. 2104, 77 L.Ed.2d 310 (1983).

Since our resolution of the waiver issue therefore turns on the extent to which the Illinois Appellate Court relied on petitioner's failure to make a timely objection as a basis for rejecting his constitutional due process claim, we begin with the language used by the court in rejecting this claim. After listing petitioner's several allegations of trial error based on the prosecutor's references to his silence at pre-trial fitness examinations, the court stated:

> Defendant has not properly preserved these issues for appeal. Defendant not only failed to make appropriate objections during trial, but failed also to specifically raise these errors in his post-trial motion for a new trial. Generally, the failure to raise an issue in a written post-trial motion constitutes a waiver of that issue and it cannot be raised as a ground for reversal on appeal. While defendant did allege, in his post-trial motion, that he was denied due process, such a contention is too general to alert the trial court to specific error. However, the waiver rule may be relaxed and a reviewing court may consider errors not properly preserved for review if the alleged error is patent and plain error affecting substantial rights of the defendant.

> After an examination of the record, we find that defendant's allegations do not rise to the level of plain error and do not, in fact, constitute any error.

*People v. Merneigh,* 89 Ill.App.3d 1204, 48 Ill.Dec. 872, 417 N.E.2d 274 (1980) (citations omitted). The court went on to set forth more specifically its reasons for rejecting petitioner's constitutional claim. *Id.*

According to petitioner's interpretation of the Illinois Appellate Court opinion, the court placed no reliance whatsoever on his prior failure to raise the due process claim. Rather, petitioner argues that the court determined that the waiver rule should be "relaxed" in order to facilitate consideration of whether the prosecution's use of petitioner's silence constituted "plain error." The district court, while discussing the question only very briefly, apparently accepted petitioner's interpretation.

■ We must respectfully disagree. Although we cannot assess the exact significance of petitioner's waiver to the Illinois Appellate Court's decision, we can state with confidence that the court relied at least partially on this waiver in rejecting petitioner's claim. The court began its discussion of this claim with an unqualified, declarative sentence stating that petitioner had not properly preserved it for appeal. Despite its later discussion of the merits of petitioner's claim, the court never backed away from this initial statement. Contrary to respondent's construction of the opinion, the court also did not affirmatively decide to "relax" the waiver rule in this case, but instead merely stated generally that the waiver rule *may* be relaxed, and a reviewing court *may* consider plain error under Illinois law. It is clear that an appellate court's authority under Illinois law to consider plain error notwithstanding a party's procedural default is purely discretionary, and that a court may therefore find an error to be waived even when the error is constitutional in nature. *See People v. Howell,* 60 Ill.2d 117, 120–21, 324 N.E.2d 403, 404–05 (1975); *People v. Pickett,* 54 Ill.2d 280, 282–83, 296 N.E.2d 856, 857–58 (1973); *People v. Bingham,* 75 Ill.App.3d 418, 426–27, 394 N.E.2d 430, 437 (1979).

In light of the Illinois Appellate Court's fairly detailed discussion of the merits of petitioner's constitutional claim, we are nevertheless reluctant to conclude that the Illinois Appellate Court relied solely and exclusively on petitioner's waiver in disposing of the claim. We need not reach such a conclusion, however, in order to find the

claim waived for purposes of habeas review. This court has held that:

> Federal habeas corpus is precluded when ... the state appellate court affirms a trial court decision on the twin grounds of lack of merit in the constitutional claim and of appellant's failure, without justification, to comply with a state procedural rule.... Invocation of the state procedural rule by the state appellate court amounts to an 'independent and adequate' state ground barring federal review....

*Farmer v. Prast,* 721 F.2d 602, 605–06 (7th Cir.1983). *Accord United States ex rel. Veal v. DeRobertis,* 693 F.2d 642, 650 (7th Cir.1982). This holding controls the present case, and mandates that we not consider the merits of petitioner's constitutional claim.

The cases cited by petitioner are distinguishable from the present case. For example, in *United States ex rel. Saulsbury v. Greer,* 702 F.2d 651, 653 (7th Cir.), *cert. denied,* 461 U.S. 935, 103 S.Ct. 2104, 77 L.Ed.2d 310 (1983), the Illinois Appellate Court evinced no express reliance on the petitioner's failure to object at trial to the state's cross-examination and closing statement in rejecting the petitioner's claims by means of a "plain error" analysis. *See id.; People v. Saulsbury,* 55 Ill.App.3d 663, 665, 13 Ill.Dec. 470, 472, 371 N.E.2d 165, 167 (1977). The Supreme Court's recent decision in *Ake v. Oklahoma,* —— U.S. ——, 105 S.Ct. 1087, 1092–93, 84 L.Ed.2d 53 (1985), holding that an Oklahoma appellate court's reliance on that state's waiver rule did not constitute an adequate and independent state ground precluding Supreme Court review, is similarly inapposite to the present case. Unlike the Illinois waiver rule, which can be applied even to federal constitutional error, the Oklahoma rule is totally inapplicable to such error. *See id.* 105 S.Ct. at 1092. Hence, the application of the Oklahoma waiver rule necessarily depends "on the determination of whether federal constitutional error has been committed." *Id.* at 1093. Unlike in Oklahoma, a finding by an appellate court in Illinois that a constitutional claim was waived can stand as an adequate and independent state ground of decision. *See Farmer v. Prast,* 721 F.2d at 606.

■ Our conclusion that petitioner has waived his constitutional objection to the state's use of his silence at pre-trial fitness examinations for purposes of federal habeas review makes it unnecessary for us to consider this objection further under the circumstances of this case. While a habeas petitioner can overcome a state procedural default by showing "cause and prejudice" for the default, *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Riner v. Owens,* 764 F.2d 1253, 1256 (7th Cir.1985), petitioner has not even alleged the existence of cause and prejudice for his failure to object to the prosecutor's conduct at trial in this case. Although respondents relied on the waiver argument both in the district court and in this court, petitioner, while joining issue over whether there was a waiver in the first instance, failed in either forum to make the obvious alternative argument that he could establish cause and prejudice for any procedural default that did occur. Petitioner did state in his brief to this court that if the district court had found a waiver, it would have held a hearing on the cause and prejudice issue, citing *United States ex rel. Veal v. DeRobertis,* 693 F.2d at 650. In *Veal,* this court remanded for a cause and prejudice hearing after concluding on appeal that the ground on which the district court had previously granted habeas relief to petitioner would be barred by petitioner's procedural default absent proof of cause and prejudice for the default. *Id.* Nevertheless, the respondent in *Veal* apparently had not previously presented its waiver argument to the district court, so the petitioner there had not been given a prior opportunity to raise the cause and prejudice issue. *Id.*

In contrast, the petitioner in this case has been given ample opportunity both below and on appeal to raise a cause and prejudice argument, but has continually failed to do so. In this situation, we deem it unnec-

essary to remand for an evidentiary hearing on cause and prejudice.

### III.

■ Petitioner's remaining contention, which was properly preserved for habeas review, is that his trial was rendered fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment when he was compelled midway through trial to submit to a sanity examination by Dr. Tuteur and when the doctor was subsequently allowed to testify against him. As support for this contention, petitioner points to *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), which held unconstitutional under the Due Process Clause a state law requiring a criminal defendant to provide notice to the state of any alibi defense that he intended to assert at trial, while placing no reciprocal disclosure obligations upon the state concerning the evidence that it intended to use to refute the alibi defense. *Id.* 412 U.S. at 475–76, 93 S.Ct. at 2212–13. Noting the Supreme Court's statement in *Wardius* that the Due Process Clause "speak[s] to the balance of forces between the accused and his accuser," *id.* at 474, 93 S.Ct. at 2211, petitioner argues that this balance was upset in the present case by the prosecution's conduct at trial. In essence, petitioner claims that he was unfairly and prejudicially surprised by the state's mid-trial request because he had made several tactical judgments—including the decision to assert the defense of insanity rather than that of consent—in reliance on the state's prior indication that its rebuttal witness would be Dr. Urse.

We find no violation of the Due Process Clause in this case. First, *Wardius* is clearly distinguishable in that it involved a state statute that provided for no reciprocal discovery by the defendant of the state's case against him. As our prior discussion of the proceedings before and during petitioner's trial vividly demonstrates, Illinois

law provides for, and the petitioner in fact received, substantial disclosure from the state concerning its case against him. Indeed, the state notified petitioner on the first day of trial that it intended to call Dr. Tuteur as a rebuttal witness, albeit based at that point on the doctor's prior fitness examinations rather than on his later sanity examination of the petitioner. Second, we do not believe that the procedure used at trial in allowing Dr. Tuteur to examine petitioner and later testify based on this examination offends the Fourteenth Amendment or fundamental fairness. This is particularly true where the doctor was used as a substitute for another state witness who, according to representations made by the prosecution to the court, was too ill to testify, and where the court mitigated the impact of the substitution by granting a five-day continuance during which the petitioner could have interviewed (but did not interview) the substitute witness.

Nor do we view it as within our role as a federal court on habeas review to assess whether the trial court should have required a greater showing from the state concerning Dr. Urse's unavailability, or whether the court acted wisely or prudently in allowing the witness substitution despite petitioner's claimed reliance on the state's use of Dr. Urse's testimony in formulating his trial strategy. At bottom, petitioner's claim amounts to no more than an allegation that the prosecution and the court committed simple trial error, a claim that generally does not provide a ground for federal habeas corpus relief. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Suffice it to say that we find no Fourteenth Amendment violation in this case.[2]

### IV.

The district court's denial of petitioner's petition for a writ of habeas corpus is accordingly affirmed.

---

**2.** Since we are able to conclude from undisputed facts contained in the record developed in the state courts that petitioner's due process

claim is without merit, we also decline petitioner's request to remand this case for an evidentiary hearing by the district court on this claim.