George PHILLIPS, Petitioner-Appellee, Cross-Appellant,

v.

Michael LANE, Director, Illinois Department of Corrections, and Steven Hardy, Warden, Menard Psychiatric Center, Respondents-Appellants, Cross-Appellees.

Nos. 85–1699, 85–1890.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1986.

Decided March 20, 1986.

Sally L. Dilgart, Office of Ill. Atty. Gen., Chicago, Ill., for respondents-appellants, cross-appellees.

David S. Morris, Morris & James, Chicago, Ill., for petitioner-appellee, cross-appellant.

Before CUMMINGS, Chief Judge, and BAUER and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The district court granted habeas corpus to George Phillips, a state prisoner, and ordered the state to release him unless it retries him; if it does retry him it will first have to conduct a hearing to determine whether he is mentally competent to stand trial. See 580 F.Supp. 839 (N.D.Ill. 1984). The basis of this ruling is that the state judge who presided at Phillips' fitness hearing (actually a "fitness restoration" hearing) failed to instruct the jury that the state had the burden of proving sanity; he told the jury that it must find fitness or unfitness by a preponderance of the evidence but did not tell them what to do if the evidence was in equipoise. This court has held that the due process clause of the Fourteenth Amendment requires that the state prove mental competence to stand trial, see *United States ex rel. Bilyew v. Franzen,* 686 F.2d 1238 (7th Cir.1982); *United States ex rel. SEC v. Billingsley,* 766 F.2d 1015, 1022–23 (7th Cir.1985)—that the state cannot require the defendant to prove incompetence—and although the state asks us to reconsider these holdings, that will not be necessary here, as we shall see.

The state has appealed from the grant of habeas corpus, while Phillips has cross-appealed from the district court's refusal to order, as a further preliminary to Phillips' retrial, a new hearing on Phillips' motion to suppress certain evidence. The ground of the cross-appeal is that at the suppression hearing that preceded the trial the judge should have inquired, on his own initiative, into Phillips' mental competence to participate in the hearing.

Phillips was tried and convicted in 1978 for a murder committed six years earlier, and was sentenced to a term of 100 to 200 years in prison. The issues in this habeas corpus proceeding arise out of events preceding the trial. Shortly after his indictment in 1974, Phillips asked for a psychiatric examination. Two psychiatrists who examined him found him to be sane; a third, Dr. Tuteur, found him insane but apparently his reports (he examined Phillips twice) were not before the judge when, in August 1975, a hearing was held on Phillips' motion to suppress statements that he had made to the police about the murder. The motion was denied. Later, additional psychiatric examinations were conducted, with Dr. Tuteur again finding Phillips insane but other psychiatrists disagreeing. In November 1976 a fitness hearing was conducted. Phillips was found to be unfit to stand trial but remained in custody where later he was examined four or five more times by psychiatrists all or most of whom (the record is unclear) found him fit for trial. The state requested a fitness restoration hearing. It was held in February 1978. Two psychiatrists testified for the prosecu-

tion and Dr. Tuteur testified for Phillips. This was the hearing at which the jury was not instructed on burden of proof. The jury found Phillips fit to stand trial and the trial followed.

Regarding the failure to instruct the jury at the fitness-restoration hearing on who had the burden of proof, we must first consider whether Phillips waived this issue by failing to raise it at the hearing. When Phillips tried to raise it on direct appeal from his conviction the Illinois Appellate Court stated that he had waived it by not making a timely objection in the trial court. *People v. Phillips*, 110 Ill. App.3d 1092, 1099, 66 Ill.Dec. 729, 734, 443 N.E.2d 655, 660 (1982). Ordinarily that would be the end of the matter. A procedural default that under state law bars consideration of the merits of a criminal defendant's challenge to his conviction also bars consideration by the federal court in a habeas corpus proceeding unless the defendant can show good cause for having committed the default, and that he probably would have been acquitted if he hadn't committed it. This is the "cause and prejudice" rule of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976), designed to make sure that the defendant in a state criminal trial gives the state courts a fair chance to correct any federal constitutional errors before he asks the federal courts to nullify his conviction, perhaps many years later (the murder of which Phillips was convicted was committed 14 years ago) and in circumstances that preclude a retrial.

Phillips did not argue in the district court that he had had good cause for not making a timely objection to the failure to instruct the jury at the fitness-restoration hearing on burden of proof. 580 F.Supp. at 849 n. 10. His argument was that all he waived, under Illinois law, was the right to argue ordinary rather than plain error, and that if there was error here, it was plain. The relevant part of the state appellate court's opinion begins, "by failing either to tender an alternate instruction or to object to the instruction as given, defendant has waived the right to raise the issue on appeal unless the omission amounts to plain error." 110 Ill.App.3d at 1099, 66 Ill.Dec. at 734, 443 N.E.2d at 660. The court proceeded to consider whether there was plain error in regard to the burden of proof at the fitness-restoration hearing and found that there was not, because "Our review of the record demonstrates that not only was the jury properly instructed that the State bore the burden of proving defendant fit for trial by a preponderance of the evidence, but also that the State met its burden." *Id.* The first clause in this passage is wrong; the judge had not told the jury which party had the burden of proof.

If a state court holds that the defendant has waived any objection he might have had to some procedural ruling (here nonruling), because he violated the state's procedural rules, its refusal to set aside the defendant's conviction is supported by an adequate and independent state ground which bars him from obtaining relief in a federal habeas corpus proceeding, even if the state court goes on and says: and anyway the objection lacked merit. *United States ex rel. Merneigh v. Greer*, 772 F.2d 322, 327 (7th Cir.1985). A conviction is not invalid because in reviewing it the state court said something wrong that was not essential to its refusing to set the conviction aside; the error has no causal significance in the decision to affirm. We would not reverse a district court because one of two independent grounds of decision was incorrect; even less should we nullify the decision of another sovereign on such a basis. Of course if the alternative grounds are not independent—if the second somehow contaminates the first—then if the second is erroneous the first may be too. The alternative ground for example might show that the state didn't take its procedural rules seriously.

The decision of the Illinois Appellate Court does not read as if it rested on two distinct and independent grounds, one of which, being a matter of state procedural law, is beyond the power of a federal court to reexamine in a habeas corpus proceed-

ing. Read literally, the decision regards Phillips as having a right to a determination of whether there was plain error, and then it proceeds to consider whether there was, and to find there was not. But a literal reading would be wrong. The Illinois plain error rule (like the federal, see Fed.R.Crim.P. 52(b)) is in terms permissive rather than mandatory: "Plain errors or defects affecting substantial rights may be noticed [on appeal] although they were not brought to the attention of the trial court." Ill.Rev.Stat. ch. 110A, ¶ 615(a). Consistently with its wording, it has been interpreted to make reversal for plain error a matter of grace, rather than a duty. See, e.g., *People v. Sanders*, 99 Ill.2d 262, 274, 75 Ill. Dec. 682, 688, 457 N.E.2d 1241, 1247 (1983); *People v. Burson*, 11 Ill.2d 360, 370, 143 N.E.2d 239, 245 (1957) (interpreting the common law predecessor to paragraph 615(a)). The parallel federal rule has also been deemed discretionary rather than mandatory, although the cases are few, see *On Lee v. United States*, 343 U.S. 747, 750 n. 3, 72 S.Ct. 967, 970 n. 3, 96 L.Ed. 1270 (1952); *United States v. Jarrad*, 754 F.2d 1451, 1456–57 (9th Cir.1985); *Stone v. United States*, 435 F.2d 1402, 1403 n. 1 (2d Cir.1970); *United States v. Indiviglio*, 352 F.2d 276, 280 (2d Cir.1965) (en banc), and none contains a full discussion of the question. The grounds for regarding the Illinois rule as discretionary are stronger. The Illinois Supreme Court has said that the rule "is permissive. It lies within the discretion of the reviewing court to consider an alleged error not raised or brought to the attention of the trial court even if it affects substantial rights." *People v. McAdrian*, 52 Ill.2d 250, 255, 287 N.E.2d 688, 691 (1972). This could hardly be clearer—leading us to note recently, "It is clear that an appellate court's authority under Illinois law to consider plain error notwithstanding a party's procedural default is purely discretionary, and that a court may therefore find an error to be waived even when the error is constitutional in nature." *United States ex rel. Merneigh v. Greer, supra*, 772 F.2d at 326.

Illinois has another plain error doctrine, limited to instructions in criminal cases, which states that "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." Ill.Rev.Stat. ch. 110A, ¶ 451(c). Assuming without having to decide that this rule is applicable to instructions given in proceedings not directly concerned with guilt or innocence—namely the fitness-restoration hearing—it is not mandatory either, despite its wording. The "interests of justice" is not a definite legal standard; and consistently with this point and with the decisions on paragraph 615(a), the Illinois courts interpret paragraph 415(c) as also a doctrine of judicial grace rather than duty. See *People v. Anderson*, 108 Ill. App.3d 563, 568, 64 Ill.Dec. 136, 140, 439 N.E.2d 65, 69 (1982); *People v. Roberts*, 75 Ill.2d 1, 14, 25 Ill.Dec. 675, 671, 387 N.E.2d 331, 337 (1979).

■ It is true that in *People v. Sanders, supra*, 99 Ill.2d at 274, 75 Ill.Dec. at 688, 457 N.E.2d at 1247, the court said, "The decision whether to apply the plain error doctrine where the evidence is not close is one of grace"—a proposition that if read literally would imply that if the evidence is close, review for plain error is mandatory, not optional. But not only would a literal reading create inconsistency with language on the same page of the opinion indicating that review for plain error is discretionary; it would redefine plain error. Prejudice is a component of plain error; to be plain, an error must not only be clear but also be likely to have changed the outcome of the case. See, e.g., *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984). That means that the domain of the rule is limited to cases where the facts are so closely balanced that the error might have made a difference in outcome. Other Illinois cases suggest therefore that the presence of "closely balanced" facts is one of the criteria for applying the plain error rule, rather than something that creates a subset of plain error cases in which the court must, rather than may, reverse if plain error is found. See *People v. Friesland*, 109 Ill.2d 369, 375, 94 Ill.Dec. 435,

437, 488 N.E.2d 261, 263 (1985); *People v. Gacy*, 103 Ill.2d 1, 28, 82 Ill.Dec. 391, 401, 468 N.E.2d 1171, 1181 (1984); *People v. Stewart*, 104 Ill.2d 463, 488, 85 Ill.Dec. 422, 433, 473 N.E.2d 1227, 1238 (1984); *People v. Lucas*, 88 Ill.2d 245, 251, 58 Ill.Dec. 840, 842–43, 430 N.E.2d 1091, 1093–94 (1981) ("The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the accused was denied a fair trial"); *People v. Jackson*, 84 Ill.2d 350, 359–60, 49 Ill.Dec. 719, 723, 418 N.E.2d 739, 743 (1981).

■ We doubt that the Illinois Supreme Court in the passage we quoted from *Sanders* (or in a similar passage in *People v. Walker*, 109 Ill.2d 484, 504, 94 Ill.Dec. 530, 539, 488 N.E.2d 529, 538 (1985)) meant surreptitiously to replace grace by duty in cases to which the plain error rule would normally apply and to create a new plain error rule for use (though purely as a matter of grace) in cases where the error was not plain in the traditional sense. This would be a weird break with the past and it seems more realistic to suppose that all the court meant was that it would invoke the plain error rule where necessary to avoid miscarriages of justice. This statement of intention would not alter the fact that invoking the rule is a matter of grace, any more than a governor would lose his discretion to grant or deny executive clemency as a matter of private conscience by saying that of course he would exercise it where necessary to avoid a miscarriage of justice. It might be monstrous if the governor refused to exercise clemency in a case where he thought there had been a miscarriage of justice, or for a court to refuse to reverse for plain error where it thought there had been a miscarriage of justice; but not every wrong—not every violation of the moral law—is a violation of a legal duty.

■ If the existence of a plain error rule entitled a defendant to obtain review in a federal habeas corpus proceeding of plain error whatever procedural defaults he may have committed, the domain of *Wainwright v. Sykes* would shrink to a small area. A defendant would always have the right to ask the federal court to set aside his state conviction for plain constitutional error, even if he had failed to make a timely objection in the state court. We do not think that this is the law; and we do not think that Illinois has some highly unusual plain error rule such as would eliminate all procedural barriers to review by federal courts of criminal convictions in Illinois for plain constitutional error. We add, finally, that even if Illinois has a mandatory plain error rule, it is limited to cases where the evidence is close, so that failure to reverse for plain error could be thought to cause a miscarriage of justice—the conviction of an innocent man. The present case is not a close case in this sense; Phillips confessed to the crime and there is no doubt of his guilt.

■ Although Phillips further argues that the plain error rule is not discretionary where the defendant's mental competence is in issue, there is no indication that the Illinois courts take this view, and certainly the Illinois Appellate Court in this case did not; it held that Phillips had committed a procedural default, though it went on to consider whether the error to which he had failed to make a timely objection was a plain one. Illinois courts have repeatedly enforced procedural defaults committed by defendants in matters relating to their mental competence. See *People v. Foster*, 76 Ill.2d 365, 380, 29 Ill.Dec. 449, 455–56, 392 N.E.2d 6, 12–13 (1979); *People v. Devine*, 98 Ill.App.3d 914, 923, 54 Ill.Dec. 73, 80, 424 N.E.2d 823, 830 (1981); *People v. Drummond*, 87 Ill.App.3d 890, 895, 42 Ill. Dec. 746, 750, 409 N.E.2d 361, 365 (1980). Of course one can think of cases where this would have a ludicrous result, as for instance if the defendant whose fitness was in question was not represented by counsel. But in such a case, the defendant could argue that there was good cause for the procedural default; and good cause was not argued in this case until too late, as we shall see. A blanket rule that defendants may not be held to any of the tactical decisions that they make through counsel

in a fitness hearing because by definition their mental competence is in issue would mean that such a defendant would always have to have his fitness determined by a jury, for he would be deemed incapable of effectively waiving his right to a jury. It would be a particularly silly principle applied to pretrial hearings, as in this case.

In light of all we have said it would be a mistake to read the Illinois Appellate Court's decision in this case as announcing a new rule of law, contrary to long-established principles announced by the state's supreme court, that either in all cases or in all cases involving issues of mental incompetence a criminal defendant has a right to insist that the appellate court consider all claims of plain error that his counsel failed, without excuse, to bring to the attention of the trial court. It is more likely that the appellate court in this case was merely doing what Illinois appellate courts frequently do—consider whether some ground not properly preserved in the trial court, and therefore waived on appeal, is so grave that the judicial conscience requires (morally, not legally) that the defendant's procedural default be overlooked. Review for miscarriages of justice is a matter of grace, and is we believe the nature of the review that the Illinois Appellate Court gave the instruction issue in this case. It found that Phillips had waived his right to complain about the instructions at the fitness hearing but went on to consider whether he should be relieved from the consequences of his default in order to prevent a miscarriage of justice.

■ That makes this a case where the final judgment in the state court system rests on two adequate and independent grounds: the failure to make a contemporaneous objection, and the lack of any error with regard to the instructions. The first is beyond our power to review, being a matter exclusively of state law (provided the petitioner has not shown good cause for his failure to object, and prejudice if we refuse to overlook the failure and let him proceed); and we cannot reach the second, since overturning an alternative ground of decision leaves the decision unaffected. *United States ex rel. Merneigh v. Greer, supra,* 772 F.2d at 327. This is not so harsh a result as it may seem to be. If a federal district court in a habeas corpus proceeding could set aside a state conviction because of an error committed by a state appellate court in exercising its purely discretionary jurisdiction to correct plain errors that the defendant had waived, state courts might become reluctant to exercise that jurisdiction. See *McCown v. Callahan,* 726 F.2d 1, 3–4 (1st Cir.1984). And there is always the safety valve left open by the "cause and prejudice" rule of *Wainwright v. Sykes.* It is not open here but only because the petitioner, represented though he was by counsel throughout the district court proceedings (as throughout the state court proceedings and in this court too), did not argue cause and prejudice as an alternative ground for excusing his procedural default. He put all his eggs in the basket that consisted of convincing the district judge that the Illinois Appellate Court had not enforced a procedural default but had instead reached and decided the merits of the constitutional challenge. He may have thought that arguing cause and prejudice could weaken his main argument or that he could not show one or both of the elements.

■ He does argue cause in this court; and we can affirm a district court's decision on any ground properly preserved by the appellee even if it was not the ground of the decision. See, e.g., *United States v. Medico Industries, Inc.,* 784 F.2d 840, 844 n. 1 (7th Cir.1986). But that is simply a rule of judicial economy, and as such is inapplicable here. If the district court fails to reach ground X because it has already decided for the winning party on ground Y, and we reverse because we disagree with the district court on Y, this means that that court has yet to consider X; so if we are convinced that the party should win the case on the basis of X, we say so, and thereby head off a remand the conclusion of which (though perhaps only after another appeal) is foreordained. All this presup-

poses that X was argued in the district court. Here it was not. It was waived. Phillips is not entitled to endless bites at the same apple, or to a windfall second chance because of the district judge's error on another issue.

We add that it is very doubtful that Phillips could have shown prejudice from the alleged error regarding the burden of proof, which may be why he did not try to preserve the issue in the district court. The weight of the psychiatric evidence favored a finding of sanity; the jury was not instructed that Phillips had the burden of proving insanity; and the evidence of his guilt at trial was overwhelming. Prejudice means more than not harmless; it means probably changed the outcome, so that a miscarriage of justice would result if the procedural default were enforced. See *United States v. Frady,* 456 U.S. 152, 170–72, 102 S.Ct. 1584, 1595–96, 71 L.Ed.2d 816 (1982). We cannot say that Phillips was prejudiced by the judge's failure to instruct the jury at the fitness hearing on the burden of proof.

We are given some pause by *Silverstein v. Henderson,* 706 F.2d 361, 367 (2d Cir. 1983), which holds that the waiver of the right to a hearing on mental competence to stand trial is not subject to the "cause and prejudice" standard when the defendant claims that he was mentally incompetent to make such a waiver. There is obvious good sense to holding that the state cannot block an attempt to determine whether a defendant was competent at the time he waived his right to a competency hearing merely by pointing out that he did waive his right; the whole issue is the effectiveness of the waiver. Since, however, Silverstein was represented by counsel when he waived his right to a competency hearing, one might have thought that the issue would be whether there was cause to disregard counsel's decision, and prejudice from failing to do so; but the Second Circuit made nothing of this point. In any event, the present case is distinguishable. The decision whether to request a particular jury instruction is a decision conventionally made by lawyer rather than by client; and we do not think it would make good sense to hold that, provided the hearing in which the jury is to be instructed concerns the defendant's mental competence at the time of the hearing, no decision made by the lawyer can bind his client. This would mean that federal judicial review of state competency hearings under the habeas corpus jurisdiction would be plenary; the state would be unable to enforce any procedural defaults committed during them because by definition the defendant may not have been competent to participate in the decision that resulted in the default. We believe, rather, that if counsel had preferred a bench trial on fitness to a jury trial, the waiver of jury trial would be imputed to Phillips. Otherwise all fitness hearings in Illinois would be conducted before juries, because a waiver of jury trial would have no legal effect. We do not think the Second Circuit meant to go so far in *Silverstein* and if they did we do not want to follow them. So, to sum up, the district judge should not have reached the merits of Phillips' claim that the jury was erroneously instructed on the burden of proving fitness in his fitness hearing, and we shall not remand the case to allow Phillips to present alternative grounds that he did not argue in the district court.

Turning to the second issue, we agree with the district court that there was no constitutional error in the conduct of the suppression hearing. Phillips' lawyer did not ask for a hearing on sanity to precede the suppression hearing, and did not even draw to the judge's attention the results of the examination by Dr. Tuteur, who had found Phillips insane but had not yet submitted his report; and Phillips exhibited no symptoms of insanity at the hearing, at least none revealed in the transcript. Even if the issue had not been Phillips' competence to participate in the suppression hearing but his competence to stand trial, Phillips would have been entitled to a fitness hearing as a matter of federal constitutional law only if the circumstances as they appeared to the judge created a bona fide

doubt of his fitness. See, e.g., *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007 (7th Cir.1984); *Acosta v. Turner*, 666 F.2d 949, 954 (5th Cir.1982). Whether the same standard is always applicable in pretrial hearings may be doubted. Since, as a general rule, the importance of the defendant's being able to participate intelligently in courtroom proceedings is less when the proceeding is a hearing on a motion rather than a trial, the doubts of his sanity must, we think, ordinarily be greater before they can justify requiring the judge to interrupt the proceeding for a hearing on sanity. Otherwise it would be impossible to have only one fitness hearing per case, since a defendant's mental competence might change between the time of his hearing on his fitness to participate in a hearing on a motion and the time of trial.

This case may be special, though, because the suppression hearing concerned the defendant's confession. If a motion to suppress the defendant's confession is denied, this may pretty well end the case as a practical matter, even though the defendant can still question the admissibility and weight of the confession at trial. Ordinarily, a confession is irresistible proof of guilt. Thus the suppression hearing may be more important than the trial itself, and we shall assume therefore that the standard of the cases we have cited, which dealt with competence at trial, is applicable to the present case as well. Those cases require the defendant to raise a bona fide doubt of sanity, and of course more is required than just asking for a fitness hearing; otherwise such hearings would be required in virtually all criminal cases, as well as in select pretrial proceedings in such cases, such as the proceeding on the motion to suppress Phillips' confession. Interpreted in light of the facts of the cases "bona fide doubt" means that at the time of the trial or hearing the judge had a substantial reason to doubt the defendant's fitness; and judged by this standard Phillips' claim must fail, for reasons well discussed by the district judge. See 580 F.Supp. at 842–47.

At the time of the suppression hearing Phillips had not yet succeeded in raising enough doubt about his sanity to make such a hearing mandatory.

█ That was the relevant time, for while he was later adjudged unfit to stand trial (at the first fitness hearing, the result of which was reversed at the fitness-restoration hearing), this was 15 months after the suppression hearing, and does not show either that he was insane at the time of the suppression hearing or, more pertinently, that the judge should have conducted a fitness hearing before the suppression hearing. Phillips argues that the judge, as soon as he found him insane at the fitness hearing, should on his own initiative (for Phillips' lawyer did not request that the suppression hearing be reopened) have conducted a hearing to determine whether Phillips had been incompetent at the suppression hearing. We disagree. A reopening was not requested; the fact that Phillips was now unfit didn't mean he had been 15 months earlier; and the determination of his unfitness at an arbitrarily selected past time (the date of the suppression hearing) would have been fraught with difficulties. It would not have been like determining sanity at the time of a crime. The crime itself may illuminate the issue, and the defendant is likely to be closely observed and remembered in the period of the crime. But at the suppression hearing Phillips apparently had been quiet. There were no psychiatric reports on his condition then. It would have been very difficult for a court to determine more than a year later whether he had been insane.

This point has been recognized in other cases where "retrospective competency hearings" have been sought. See, e.g, *United States ex rel. Bilyew v. Franzen*, *supra*, 686 F.2d at 1247; *United States v. Johns*, 728 F.2d 953, 957 (7th Cir.1984). Sometimes ordering such a hearing is nevertheless an appropriate remedy, but it does not follow that the failure to order one will generally or in this particular case convict the state of having deprived the defendant of his liberty without due pro-

cess of law. Especially is that true where the defendant did not ask for a retrospective hearing. His lawyer may have felt that now that Phillips had been adjudged unfit to stand trial, it was unimportant what had happened pretrial (i.e., denial of his motion to suppress). He may even have feared that another fitness hearing, retrospective or not, might undermine the finding of the first hearing. In any event the failure to conduct such a hearing was not a constitutional error, when the alleged period of mental incompetence was more than a year in the past, when it concerned a pretrial ruling, when at the time of that ruling the judge had had no reason to doubt the defendant's sanity, and when no hearing was requested.

■ The district court's judgment is affirmed insofar as it denied Phillips relief, and is reversed insofar as it granted him relief, and the case is returned to the district court with directions to deny the petition for habeas corpus in its entirety. So ruling, we do not mean to foreclose the possibility that Phillips may have a claim that he received constitutionally inadequate assistance of counsel, when his counsel failed to request an instruction on burden of proof at the fitness-restoration hearing and failed at the suppression hearing to inform the judge of the results of Dr. Tuteur's examination. Such a claim cannot be evaluated on the record compiled in the district court, but Phillips is always free to file another habeas corpus petition, after exhausting any state remedies that remain open to him. There is no doctrine of res judicata in federal habeas corpus, though redundant petitions can be dismissed out of hand. See 28 U.S.C. § 2244.

AFFIRMED IN PART, REVERSED IN PART.